UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

- against -

                            **MEMORANDUM & ORDER**
                            08 CR 706 (RJD)

ILYA PEVZNER,

Defendant,

- and -

INNA PEVZNER and MIKHAIL PEVZNER,

Sureties.
-----------------------------------------------------------X
DEARIE, Chief Judge.

Sureties Inna and Mikhail Pevzner ("the Pevzners"), parents of fugitive defendant Ilya Pevzner, move the Court for remission of bail pursuant to Federal Rule of Criminal Procedure 46(f)(4). For the following reasons, their motion is denied.

## BACKGROUND

On August 12, 2008, Magistrate Judge Orenstein arraigned defendant Ilya Pevzner on a complaint alleging that he impersonated an FBI agent and a United States Secret Service officer. Judge Orenstein agreed to release defendant on a $50,000 personal recognizance bond which his mother, Inna Pevzner, agreed to sign at the arraignment. Before she signed the bond, Judge Orenstein explained to her that the bond was "on certain conditions and if [defendant] violates the conditions of the bond you would owe the Government $50,000." (Arraignment Tr. 6:16-18, Aug. 12, 2008.) Judge Orenstein then explained to Ilya Pevzner, in Inna Pevzer's presence, that if he violated any condition of his release the government "could go after your mother and father

and garnish any wages that they have to get that $50,000." (Id. at 7:6-7.) Later in the arraignment, Judge Orenstein explained to Inna Pevzer that she did not have to sign the bond and that she could come off the bond at any time. (Id. at 9:10-25.) Ms. Pevzner told the judge that she understood. (Id.)

When I arraigned defendant on the indictment on October 24, 2008, pretrial services informed me that defendant had been arrested by local authorities twice over the previous week and charged with offenses that included identity theft and grand larceny and that it considered defendant a flight risk. (Hearing Tr. 3:9-25, Oct. 24, 2008.) I set a bail conference for October 28, 2008 to determine whether defendant was complying with the mental health treatment that Judge Orenstein imposed as a condition of his release. At that hearing, defendant's lawyer stated that Inna and Mikhail Pevzner were willing to post their home to secure defendant's bond. (Bail Hearing Tr. 4:10-24, Oct. 28, 2008.) I remanded defendant, however, because in addition to his arrests, he also refused to attend mental health treatment sessions. (Id. at 5:2-6:7.)

On December 3, 2008, defendant again sought bail, suggesting a $150,000 bond that would be secured by his parents' house. On December 19, 2008, I held a bail hearing and in light of defendant's earlier violation of his conditions of release, I set bail at $250,000. Both Inna and Mikhail Pevzner attended the hearing. In the presence of the Pevzners, I asked defendant's lawyer, James Kilduff, if the Pevzners spoke English; he answered "yes." (Bail Hearing Tr. 3:19-21, Dec. 19, 2008.) Following that, I explained to the Pevzners that "this is serious business. And the last thing in the world I want to do is see two hard working people lose the family home. But that's exactly what happens if [defendant] doesn't abide by the terms." (Id. at 4:24-5:3.) Later in the proceeding, I had the following exchange with Mikhail Pevzner and attorney Kilduff:

>SURETOR: Are you (ui) 250,000?

>THE COURT: $250,000 bond.

>SURETOR: Yeah, but property 273 minus 70, only 200.

>THE COURT: That's right.

>MR. KILDUFF: You've got to sign a personal recognizance bond for the balance.

(Id. at 7:2-8.)

During a hearing for the signing of the bond later the same day, Magistrate Judge Go again explained to the Pevzners that they were liable for the entire $250,000 bond:

>THE COURT: Now, if you sign the bond and Mr. Pevzner fails to comply with the conditions of release and, most importantly, fails to appear in court, you will owe the government $250,000. The government can seek to collect from just one of you or both of you or all three of you up to that amount. And to ensure that it can collect on the bond, you are being required to have a lien placed on your house in New Jersey and you could very well lose your home. And houses that are forfeited rarely sell for market value. And you could be subject to other collection efforts of the government including having any other things of value seized; your bank accounts, your wages garnished and be subject to the collection efforts of the government until every cent is paid in full. Do you understand?

>MR. PEVZNER: Yes.

>THE COURT: Are these your signatures here on the bond?

>MR. PEVZNER: Yes.

>MS. PEVZNER: Yes.

(Detention Hearing Tr. 5:13-6:8, Dec. 19, 2008.)

On June 25, 2009, a jury found defendant guilty on one count of False Personation of an FBI agent and one count of False Personation of a United States Secret Service officer. He

remained at liberty until his sentencing, which was scheduled for October 16, 2009. Prior to the sentencing, however, defendant was arrested for grand larceny. I scheduled a bail revocation hearing for October 7, 2009. In response, defendant sent the Court a letter stating that he had left the United States for Russia.

Since defendant fled, I have given him numerous opportunities to appear. The government moved for an order forfeiting defendant's bail on November 19, 2009. On December 18, 2009, I declared the bail forfeited in accordance with Federal Rule of Criminal Procedure 46(f), but deferred ruling on the Pevzners' request to set aside the forfeiture. On January 20, 2010, I denied the Pevzners' motion to set aside the forfeiture, but stayed the decision 20 calendar days to give defendant a final opportunity to present himself to the Court. Finally, I agreed to extend the stay of defendant's bail forfeiture until March 5, 2010 because the Pevzners claimed that defendant needed that time to obtain documents that would allow him to travel from Russia to the United States. As of today, defendant has not appeared.

The Pevzners now move for remission of a portion of the $250,000 bond. The grounds for the motion are that (1) justice does not require the forfeiture and (2) the Pevzners did not understand that they were liable for the entire $250,000 bond regardless of the value of their home.

## DISCUSSION

Under Federal Rule of Criminal Procedure 46(f), the Court "may remit in whole or in part" a bail forfeiture if it "appears that justice does not require the bail forfeiture." "The Court must consider several factors in evaluating the remission motion: 'whether the defendant's

4

breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; ... any explanation or mitigating factors presented by the defendant; ... whether the surety has assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family.'" United States v. Gambino, 17 F.3d 572, 574 (2d Cir. 1994) (quoting United States v. Carvajal, 674 F. Supp. 973, 974 (E.D.N.Y. 1987)). "The Court, however, may not consider the financial plight or interests of the movant." United States v. Gutierrez, 771 F.2d 1001, 1004 (7th Cir. 1985); see also Carvajal, 674 F. Supp. at 974. The Pevzners argue that two of the factors, whether the defendant's failure to appear is willful and whether there are mitigating factors presented by the defendant, should not be considered because they are outside of their control. They cite no support for that proposition, however, and numerous cases hold otherwise. See, e.g. United States v. Gallego, No. 02 CV 5987, 2003 WL 1193536, at *1-2 (E.D.N.Y. Jan. 29, 2003); Carvajal, 674 F. Supp. at 974.

There is no indication that defendant's flight was anything other than willful. In his October 3, 2009 letter to me, defendant explained that he fled to Russia because "[My lawyer] told me that I would be remanded and a harsh sentencing would be imposed." As a mitigating factor, the Pevzners argue that defendant's flight is a product of mental illness which the Pevzners "could not control and could not anticipate." (Sureties' Br. 12.) In the same section of their brief, however, they say that defendant was diagnosed with bipolar disorder in 2009 "[a]fter years of erratic behavior." (Id. at 11.) In an earlier brief, the Pevzners said that defendant's behavior has been erratic since 2005. (Sureties' Br. in Opp., Dec. 16, 2009) ("[I]n 2005, Ilya's behavior started to become erratic. He was gambling often, stealing from family, and telling stories that were hard to believe. He was arrested several times between 2005 and 2009 for

5

writing bad checks, petit larceny, trespassing on a military base, and theft by deception."). Furthermore, defendant violated his bail conditions in this case causing me to quintuple his bail. Of course, at the time the Pevzners signed the $250,000 bond, they were aware of erratic behavior by defendant, but still took the risk.

The Pevzners argue that the amount of the forfeiture is excessive in comparison to the cost, inconvenience, and prejudice suffered by the government. The prejudice and inconvenience caused to the government in this case is ongoing, however, because the defendant is still at large. See Gallego, 2003 WL 1193536, at *2 ("[B]ecause [defendant] is still at large, the amount of delay caused by his violation, and thereby the prejudice to the government, is unknowable and potentially indefinite."); United States v. Diaz, 811 F.2d 1412, 1415 (11th Cir. 1987) ("[T]here is no way to measure the cost and inconvenience to the government while [defendant] is not in custody."). Furthermore, remission of bail while the defendant is still at large would be prejudicial to the government because it would thwart the entire purpose of bail, which is to secure the presence of the defendant. See Gallego, 2003 WL 1193536, at *2; Diaz, 811 F.2d at 1415; Gutierrez, 771 F.2d at 1004. I increased defendant's bail to $250,000 precisely because his behavior evidenced an enhanced risk of flight. In light of that, defendant's bail was clearly not excessive since it was not able to prevent his flight. See United States v. Skipper, 633 F.2d 1177, 1179 (5th Cir. 1981). Considering these circumstances, this factor does not weigh in the Pevzners' favor.

The Pevzners also argue that their assistance in apprehending defendant weighs in their favor. I appreciate any efforts that the Pevzners may have made, but while the defendant is still at large, it makes little sense to weigh the Pevzners' assistance heavily. See Gallego, 2003 WL

1193536, at *2 (holding that while defendant is still at large sureties' assistance in apprehending him is of "minor importance").

The final factor, whether the sureties are professionals, weighs in the Pevzners' favor. I understand that the Pevzners' decision to sign the bond and put their home up as collateral was motivated by their love for their son and it must have been very difficult for them to objectively consider the risks involved. Despite that, it is important to the credibility of the bail system that courts do not relent just because of any hardship visited on caring and concerned parents. Here, the Pevzners were repeatedly warned that if their son violated the conditions of the bond, they would owe the entire bond. To now allow remission while defendant is at large would undermine the integrity of those proceedings.

The factors that would weigh in the Pevzners' favor are largely undermined by the fact that the defendant is at large. I am not aware of any cases — nor do the Pevzners cite any — in which a court granted sureties remission while the defendant was at large. See Gallego, 2003 WL 1193536, at *4 (holding that there is "little or no precedent directly supporting the sureties' claim" for remission while defendant is still at large); Carvajal, 674 F. Supp. at 975 ("It is a rare case indeed where remission of a forfeited bond is granted when defendant has not reappeared."); Diaz, 811 F.2d at 1415-16 (denying remission of bail even though sureties claimed defendant had been kidnapped); Gutierrez, 771 F.2d at 1004 (declining to even consider the remission factors because defendant was still at large); Skipper, 633 F.2d at 1180 n.6 ("No case has been cited and we have found none remitting a forfeited bond while defendant was still at large."). The Pevzners argue that I should grant remission because two courts have done so when the defendant was believed to be dead. That situation is hardly comparable to this one. The

effectiveness and integrity of the bail system is not threatened by the continued absence from court of someone who is dead. For the Pevzners to have had a chance for bail remission, all defendant needed to do was appear in court.

The Pevzners' argument that the forfeiture should be reduced to the amount their house sells for because they did not understand the full extent of their obligations is also without merit. During the December 19, 2008 bail hearing, I confirmed that the Pevzners spoke English. Mikhail Pevzner specifically brought up the fact that his house did not have $250,000 of equity during that hearing and the issue was clarified by counsel. Additionally, Judge Go again explained to the Pevzners when they signed the bond that they were liable for the full amount and also stated that houses usually do not sell for full value in forfeiture sales.

Without question the Court is presented with an unpleasant task. Having waited inordinately long for the defendant to return to prevent the hardships of forfeiture, the Court is constrained to act to ensure the effectiveness and credibility of the bail system. Pretrial release serves the interests of all concerned and can only be implemented if the conditions of release are enforced. I hoped, and waited, for a different resolution of this matter. But I have waited in vain.

The motion is denied.

SO ORDERED.

Dated: Brooklyn, New York
May __, 2010

s/ Judge Raymond J. Dearie

_____
RAYMOND J. DEARIE
United States District Judge